COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Coleman and Willis
Argued at Salem, Virginia


MICHAEL LEE WEAVER

OPINION BY

v.          Record No. 1415-96-3       JUDGE JERE M. H. WILLIS, JR.
                                        JUNE 24, 1997

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
Charles M. Stone, Judge

Wayne T. Baucino, Assistant Public Defender,
for appellant.

Kathleen B. Martin, Assistant Attorney
General (James S. Gilmore, III, Attorney
General, on brief), for appellee.


Michael Lee Weaver was convicted by a jury of attempted second degree murder. On appeal, he contends (1) that his prosecution by the Commonwealth was barred by Code § 19.2-294 due to his previous acquittal in federal court for a similar statutory offense, and (2) that prosecutorial misconduct barred his retrial for attempted murder. We disagree and affirm the judgment of the trial court.

I.

On November 26, 1992, Weaver was charged with the November 25, 1992 malicious wounding of Charles Michael Hudson, in violation of Code § 18.2-51. Following his arrest, federal authorities investigated a possible connection between the attack and Hudson's role as a witness in an upcoming federal trial. On January 22, 1993, a federal grand jury indicted Weaver for

conspiracy to murder and attempted murder of a witness to prevent him from testifying in a federal criminal trial.  See 18 U.S.C. §§ 371, 1512(a)(1)(A).  On January 28, 1993, the Martinsville General District Court entered a nolle prosequi of the malicious wounding charge on motion of the Commonwealth's Attorney.  On November 11, 1993, a federal jury acquitted Weaver of both federal charges.

On May 2, 1994, Weaver was indicted in the Martinsville Circuit Court for attempted murder of Hudson.  He was tried on December 27, 1995.  After approximately two hours of deliberations, the jury recessed for the evening and resumed deliberations the following day.  The trial judge instructed the jurors not to discuss the case with anyone and advised them that they should not be "influenced in anyway by anyone."  The jury was not instructed to avoid media coverage of the trial.

That evening, a local cable television station called Commonwealth's Attorney Randy Smith at his home and asked him to discuss the case during a live call-in program.  Mr. Smith responded to the television host's questions about the case.  Several persons called the talk show in response to Mr. Smith's remarks, "both criticizing his alleged unprofessionalism and defending his right to inform the public."  Weaver called the television station to complain and stated on the air that he had been found not guilty at his federal trial.

A juror heard part of the talk show after Mr. Smith's

interview, including the telephone call from Weaver.  The juror

reported to the trial court that his ability to remain impartial

had been affected.  The trial court granted Weaver's motion for a

mistrial.  Relying upon the Double Jeopardy Clause, Weaver moved

to dismiss the charge due to prosecutorial misconduct.  The trial

court denied the motion.  Upon retrial, a jury convicted Weaver

of attempted murder.

                              II.

    Weaver contends that Code § 19.2-294 barred this

prosecution.  Code § 19.2-294 provides, in pertinent part:

> If the same act be a violation of two or more
> statutes, or of two or more ordinances, or of
> one or more statutes and also one or more
> ordinances, conviction under one of such
> statutes or ordinances shall be a bar to a
> prosecution or proceeding under the other or
> others.  <u>Furthermore, if the same act be a
> violation of both a state and a federal
> statute a prosecution under the federal
> statute shall be a bar to a prosecution under
> the state statute.</u>

(Emphasis added.)  Weaver contends that his prosecution for

attempted murder in violation of federal witness protection

statutes bars his subsequent state prosecution for attempted

murder, a common law crime.

    "Section 19.2-294, however, applies only where two or more

<u>statutory</u> offenses are involved."  <u>Blythe v. Commonwealth</u>, 222

Va. 722, 725, 284 S.E.2d 796, 797 (1981) (emphasis in original)

(defendant's prior conviction for statutory offense did not bar

prosecution for common law offense).  Thus, "this section is not

applicable when one crime is a common law offense."  Darnell v.
Commonwealth, 12 Va. App. 948, 957, 408 S.E.2d 540, 545 (1991).
Accord Martin v. Commonwealth, 242 Va. 1, 8-9, 406 S.E.2d 15, 19
(1991) (defendant's prior conviction for statutory offense did
not bar subsequent prosecution for common law offense of
attempted murder "[e]ven if we assume that [defendant's] conduct
constituted only one act").

Weaver notes correctly that Blythe and its progeny addressed
successive prosecutions in state courts, rather than successive
proceedings in federal and state courts.  He argues that the
provision in Code § 19.2-294 covering successive federal and
state prosecutions should be interpreted differently from its
companion provision governing successive state prosecutions.

Weaver argues that the term "statute" in Code § 19.2-294
should be construed broadly to include both common law and
statutory offenses.  He cites Owens v. Commonwealth, 129 Va. 757,
105 S.E. 531 (1921), and Sigmon v. Commonwealth, 200 Va. 258, 105
S.E.2d 171 (1958).  His reliance upon those decisions is
misplaced.  Despite general reference in Owens and Sigmon to
state "law," rather than state "statute," both decisions
concerned application of the statutory bar to successive federal
and state prosecutions for statutory offenses and, thus, did not
involve prosecution for a common law crime.[1]

---

[1]Without a statutory definition of the offense, the mere fact
that Code § 18.2-26 fixes the punishment for attempted murder does
not transform attempted murder into a statutory offense to which
Code § 19.2-294 would apply.  See Blythe, 222 Va. at 725, 284

- 4 -

Weaver argues also that the General Assembly did not intend for Code § 19.2-294 to exclude coverage of common law offenses. Blythe, which held clearly that Code § 19.2-294 does not apply to prosecutions for common law crimes, was decided in 1981. The legislature revised Code § 19.2-294 in 1987. 1987 Va. Acts ch. 241. Had the General Assembly disagreed with the Supreme Court's ruling, it could have amended the statute to include common law crimes. "'[W]here the General Assembly acts in an area in which this Court has already spoken, it is presumed to know the law as the Court has stated it and to acquiesce therein.'" McFadden v. Commonwealth, 3 Va. App. 226, 230, 348 S.E.2d 847, 849 (1986) (quoting Burns v. Board of Supervisors, 227 Va. 354, 360, 315 S.E.2d 856, 860 (1984)). See also Hall v. Commonwealth, 14 Va. App. 892, 898-99, 421 S.E.2d 455, 460 (1992) (en banc).

Finally, "'[n]ontechnical words in statutes are taken to have been used in their ordinary sense and acceptation.'" Smith v. Commonwealth, 3 Va. App. 650, 655, 353 S.E.2d 159, 161 (1987) (citations omitted). In ascertaining the meaning of "statute," we note with approval the following:

> **Common law.** As distinguished from law created by the enactment of legislatures, the common law comprises the body of those principles and rules of action, relating to the government and security of persons and property, which derive their authority solely from usages and customs of immemorial antiquity, or from the judgments and decrees

S.E.2d at 797; Darnell, 12 Va. App. at 957 n.6, 408 S.E.2d at 545 n.6.

of the courts . . . .

\*     \*     \*     \*     \*     \*     \*

**Statute,** n. An act of the legislature
declaring, commanding, or prohibiting
something . . . . This word is used to
designate the legislatively created laws in
contradistinction to court decided or
unwritten laws. See **Common law.**

Black's Dictionary, 250-51, 1264-65 (5th ed. 1979). While either
"statute" or "common law" may be referred to in a general sense
as the "law," see id. at 795-96, they are mutually exclusive
terms. See Code § 1-10 (noting that the common law remains in
force in the Commonwealth except where modified by statute).

To conclude that the term "statute" as it is used in Code
§ 19.2-294 excludes common law crimes in the first sentence, but
includes them in the second sentence, would lead to an absurd
result. Cf. Shull v. Commonwealth, 16 Va. App. 667, 670, 431
S.E.2d 924, 925 (1993).

"[W]here a word is used in different
sections of a statute and its meaning is
clear in all but one instance, '[t]he same
meaning . . . will be attributed to it
elsewhere unless there be something in the
context which clearly indicates that the
Legislature intended some other and different
meaning."

Walthall v. Commonwealth, 3 Va. App. 674, 680, 353 S.E.2d 169,
172 (1987) (quoting Board of Supervisors of Albemarle County v.
Marshall, 215 Va. 756, 761-62, 214 S.E.2d 146, 150 (1975)).

We hold that the use of the term "statute" in Code
§ 19.2-294 excludes common law offenses from the entire purview

of the statute.  Thus, Code § 19.2-294 did not bar Weaver's prosecution for attempted murder.

### III.

Weaver next contends that the trial court erred in denying his motion to dismiss the attempted murder charge on double jeopardy grounds following the granting of the mistrial.  He argues that Mr. Smith should have known that his televised discussion of the trial would violate an attorney disciplinary rule[2] and would necessitate a defense motion for a mistrial. Weaver urges us to reconsider our prior decisions and to adopt a lesser standard that will bar successive prosecution when the prosecutor "was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request."  See Bauder v. State, 921 S.W.2d 696, 699 (Tex. Ct. Crim. App. 1996).

### A.

In Robinson v. Commonwealth, 17 Va. App. 551, 553, 439 S.E.2d 622, 623, aff'd en banc, 18 Va. App. 814, 447 S.E.2d 542 (1994), we held that prosecutorial misconduct causing a mistrial does not bar retrial unless the prosecutor intended to subvert

---

[2]DR 7-106(A) of the Disciplinary Rules of the Virginia Code of Professional Responsibility provides that:  "A lawyer participating in . . . the prosecution . . . of a criminal matter that may be tried by a jury shall not make or participate in making an extra-judicial statement that a reasonable person would expect to be disseminated by means of public communication that he knows, or should know, constitutes a clear and present danger of interfering with the fairness of the trial by a jury."

the protection afforded by the Double Jeopardy Clause.  Id. at 553, 439 S.E.2d at 623 (citing MacKenzie v. Commonwealth, 8 Va. App. 236, 240, 380 S.E.2d 173, 175 (1989)).  The United States Supreme Court has pronounced the following standard:

> Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

Oregon v. Kennedy, 456 U.S. 667, 676 (1982).

We have consistently adhered to the foregoing standard, and we decline to deviate from our prior decisions.  See, e.g., Bennefield v. Commonwealth, 21 Va. App. 729, 467 S.E.2d 306 (1996) (noting that protections afforded under Virginia Constitution are coexistent with those in federal constitution); Robinson, 17 Va. App. at 553, 439 S.E.2d at 623 ("Without the requisite intent . . . gross prosecutorial misconduct will not satisfy the exception set forth in Kennedy."); Kemph v. Commonwealth, 17 Va. App. 335, 341, 437 S.E.2d 210, 213–14 (1993); MacKenzie, 8 Va. App. at 239–40, 380 S.E.2d at 175.

B.

"In Kennedy, the Supreme Court made it clear that the exclusive focus should not be on the fact of prosecutorial error or on the impact of such error upon the defendant, but only on the intent of the prosecutor in committing the error."  Robinson, 17 Va. App. at 553, 439 S.E.2d at 624.  Thus, as the trial court determined, the dispositive issue here is not whether Mr. Smith's

"possible violation of a disciplinary rule bars the defendant's retrial, but whether or not the actions of Mr. Smith, which may have ethical implications, were done by him with the intent to provoke the defendant into moving for a mistrial."

In proving "that the second prosecution is barred by double jeopardy, [the defendant] must produce sufficient evidence to allow the court to infer 'the existence or nonexistence of intent from objective facts and circumstances.'" Robinson, 17 Va. App. at 553, 439 S.E.2d at 624 (quoting Kennedy, 456 U.S. at 675).

> In this case, the trial court stated that:
> Even though this Court is disturbed by the actions of a prosecutor of Mr. Smith's long experience, the Court does not believe there was any Machiavellian scheme involved in Mr. Smith's mind to subvert the trial process, even though that was the likely and eventual result, and find [sic] that the prosecution did not intend to cause a mistrial.

Under familiar principles of appellate review, the trial court's findings of fact are binding unless they are without evidence to support them. Here, Mr. Smith did not initiate contact with the cable television station. The interview, while regrettable, did not, by itself, evince an intent to compel or provoke Weaver to seek a mistrial. Viewing the record and the objective facts and circumstances, we cannot say that the trial court's ruling was without evidentiary support.

Accordingly, the judgment of the trial court is affirmed.

                                                    Affirmed.